# Supreme Court of Texas

No. 22-0620

Texas Disposal Systems Landfill, Inc.,

*Petitioner*,

v.

Travis Central Appraisal District, by and through Marya Crigler,
acting in her official capacity as Chief Appraiser of Travis
Central Appraisal District,

*Respondent*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued February 22, 2024**

JUSTICE BLAND delivered the opinion of the Court, in which Chief Justice Hecht, Justice Lehrmann, Justice Blacklock, Justice Busby, Justice Huddle, and Justice Young joined.

JUSTICE BOYD filed an opinion dissenting in part, in which Justice Devine joined.

In this tax appraisal dispute, we decide whether limits placed on a taxing authority's claim in an appeal from an appraisal review board decision also confine the trial court's subject matter jurisdiction. We conclude that the limits the Tax Code imposes on bringing such an

appeal are not jurisdictional. A trial court must nonetheless evaluate compliance with Tax Code mandates in deciding the subject property's appraised value. The court of appeals concluded that the trial court had jurisdiction over the taxing authority's challenge, albeit for a different reason. We therefore affirm its judgment.

# I

## A

The Texas Constitution provides that "[a]ll real property and tangible personal property in this State . . . shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."[1] Any calculation of property tax in Texas thus begins with an assessment of the property's value. Under laws implementing this constitutional provision, a subject property is appraised at its "market value."[2]

The Tax Code provides guidance for conducting this appraisal. Appraisers must use "generally accepted appraisal methods," and the Code endorses specific kinds of appraisal methods for determining market value.[3] Regardless of the method, the overarching goal is to fix

---

[1] Tex. Const. art. VIII, § 1(b).

[2] Tex. Tax Code § 23.01(a). The Legislature is free to adopt other modes of valuation, provided that those modes do not exceed market value. *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, 554 S.W.3d 572, 576 (Tex. 2018).

[3] Tex. Tax Code § 23.01(b). The Tax Code provides:

The market value of property shall be determined by the application of generally accepted appraisal methods and techniques. If the appraisal district determines the appraised value of a property using mass appraisal standards, the mass appraisal standards must comply with the Uniform Standards of Professional Appraisal Practice. The same or similar

2

a market value for the subject property. Market value is "the price at which a property would transfer for cash or its equivalent under prevailing market conditions" in an informed, arms-length transaction.[4] From there, one calculates the property tax owed by applying exemptions and multiplying the appraised value by the applicable tax rate.

The Constitution enshrines two limits on property taxes. First, "Taxation shall be equal and uniform."[5] An appraiser must use similar appraisal methods and techniques for similar properties and must

---

appraisal methods and techniques shall be used in appraising the same or similar kinds of property. However, each property shall be appraised based upon the individual characteristics that affect the property's market value, and all available evidence that is specific to the value of the property shall be taken into account in determining the property's market value.

*Id.*

[4] *Id.* § 1.04(7). The Tax Code defines "market value" as:

[T]he price at which a property would transfer for cash or its equivalent under prevailing market conditions if:

(A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;

(B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and

(C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

*Id.*

[5] Tex. Const. art. VIII, § 1(a).

arrive at a value proportionate to the appraisals of similar properties.[6] A taxpayer may challenge a taxing authority's appraised value on the ground that the value is not equal and uniform when compared with similarly situated properties.[7]

Second, a property appraisal must not be set at "a greater value than [the property's] fair cash market value."[8] A market value determination is a constitutional ceiling: under the Constitution, property is to be appraised in proportion to its value, but it must never be appraised at *more* than market value.

The Tax Code secures these constitutional rights to fair taxation through a robust protest procedure. A taxpayer may challenge a taxing district's proposed appraised value on grounds that the appraised value is greater than the property's market value. The taxpayer may also claim that the appraised value results in taxation that is not equal and uniform. Such challenges are first brought before a local appraisal review board.[9] If a taxpayer is dissatisfied with the board's determination, then the taxpayer may seek judicial review.[10] Once in court, the parties start from scratch, without any deference to the board's decision. The trial court conducts a trial de novo of the protest,

---

[6] Tex. Tax Code §§ 23.01(b), 41.43, 42.26. The requirement that taxation be equal and uniform applies within classes of property, not between classes of property. *Hegar v. Tex. Small Tobacco Coal.*, 496 S.W.3d 778, 785 (Tex. 2016). The Legislature has latitude to construct tax classifications. *Id.*

[7] Tex. Tax Code §§ 41.41(a)(2), 41.43.

[8] Tex. Const. art. VIII, § 20.

[9] Tex. Tax Code § 41.41(a).

[10] *Id.* § 42.01.

4

setting an appraised value for the subject property based on the evidence it hears.[11]

Rarely, the appraisal district is the party dissatisfied with the board's decision. In such a case, the Tax Code gives appraisal districts the right to seek judicial review.[12] But the Tax Code places different limits on the district's claim for relief than it does the taxpayer's. Before an appraisal district may appeal, the chief appraiser must obtain permission to appeal from the board of directors of the appraisal district.[13] And a district cannot challenge an appraised value under $1 million unless the district first establishes fraud.[14] Finally, pertinent here, a district's appeal is confined to an appeal from "an order of the appraisal review board determining . . . a taxpayer protest."[15]

---

[11] *Id.* §§ 42.23, 42.24. The Tax Code grants the trial court determining the appeal the authority to:

> (1) fix the appraised value of property in accordance with the requirements of law if the appraised value is at issue;
>
> (2) enter the orders necessary to ensure equal treatment under the law for the appealing property owner if inequality in the appraisal of his property is at issue; or
>
> (3) enter other orders necessary to preserve rights protected by and impose duties required by the law.

*Id.* § 42.24.

[12] *Id.* § 42.02.

[13] *Id.* § 42.02(a).

[14] *Id.* § 42.02(b), (c).

[15] *Id.* § 42.02(a).

**B**

Petitioner Texas Disposal Systems Landfill, Inc. owns 344 acres of land in Travis County, which it operates as a landfill. In 2019, Respondent Travis County Central Appraisal District appraised the market value of the landfill at $21,714,939. The Landfill protested this amount under the Tax Code provision requiring equal and uniform taxation.[16] The Landfill did not, however, claim that the District's appraised value was higher than the market value of the property.

The Landfill won its challenge. The appraisal review board reduced the appraised value of the subject property by nearly ninety percent. The board concluded: "The subject property was unequally appraised, and the appraisal records should be adjusted to reflect a value of $2,800,000."

The District appealed to the trial court, claiming that the board erred in concluding that the District's appraised value was not equal and uniform when compared with similarly situated properties. The District also claimed that the board's appraised value was lower than the subject property's true market value:

> The market value of [the landfill] is greater than the determination of the [Appraisal Review Board] and the value set by the ARB results in unequal appraisal of the subject property. The ARB's value determination was arbitrary, erroneous, unjust, and unlawful and violated the requirements of Tex. Tax Code §§ 1.04(7) and 23.01. The result of the ARB's determination is an appraisal of the subject property below market value and unequal appraised value.

---

[16] *See id.* § 41.41(a)(2).

6

The Landfill answered and filed a plea to the jurisdiction. In its jurisdictional plea, the Landfill argued that the challenge it made before the appraisal review board was an equal-and-uniform challenge, not one based on market value. Thus, the trial court lacked jurisdiction to consider market value. The trial court granted the Landfill's plea.

The court of appeals reversed.[17] The court held that a trial court's review of an appraisal review board's decision is not confined to the grounds the taxpayer asserted before the board.[18] The court of appeals further concluded that an appraisal district has no obligation to raise reasons justifying its appraised value in response to a taxpayer protest; therefore, the statute permits appraisal districts to support their claimed appraised value for reasons the appraisal review board did not consider.[19] We granted the Landfill's petition for review.

## II

### A

Whether a court has subject matter jurisdiction is a question of law we review de novo.[20] If the Legislature assigns exclusive or original jurisdiction to an administrative body, then no right to judicial review exists "unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional

---

[17] 684 S.W.3d 470, 480 (Tex. App.—Austin 2022).

[18] *Id.* at 477–78.

[19] *Id.*

[20] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "[W]e have an obligation to examine our jurisdiction any time it is in doubt . . . ." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020).

right."[21] Even when such a statute provides judicial review, ordinarily the trial court does not acquire jurisdiction until the party exhausts its administrative remedies.[22]

The Tax Code grants appraisal districts the right to judicial review of an appraisal review board's orders. "On written approval of the board of directors of the appraisal district, the chief appraiser is entitled to appeal an order of the appraisal review board determining . . . a taxpayer protest as provided by" certain tax code provisions permitting a protest.[23] The parties dispute whether the appeal, granted from "an order of the appraisal review board determining . . . *a taxpayer protest*," restricts judicial review to the protest grounds the property owner presented before the appraisal review board.

The Landfill argues that the trial court decides only the taxpayer's protest. To open the door to matters the taxpayer did not raise in protest would thwart the Legislature's goal of an expedient, taxpayer-driven protest system. The District responds that its appeal is from the board's "order" and thus the statute does not confine the District's appeal to the taxpayer's protest. The District notes that the Tax Code requires a trial de novo, in which "a court may consider

---

[21] *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000).

[22] *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002).

[23] Tex. Tax Code § 42.02(a).

arguments and evidence that are introduced afresh."[24] The District also notes that the statute vests the trial court with the authority to "fix the appraised value of property in accordance with the requirements of law if the appraised value is at issue."[25]

**B**

Considering the context of the Tax Code and its provisions granting an appeal, the language authorizing the District to appeal from the order determining the taxpayer's protest does not limit the trial court's jurisdiction.[26] By authorizing the chief appraiser to appeal "an order of the appraisal review board determining . . . a taxpayer protest," the Tax Code imposes limits on the District's claim, but like many of the Code's procedural limits, the one presented in this case does not carry jurisdictional implications. Rather, it governs proceedings before the trial court and the availability of relief to an appraisal district.[27]

We agree with the Landfill that the statutory language limiting an appeal to "an order of the appraisal review board determining . . . a

---

[24] *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 50 (Tex. 2018).

[25] Tex. Tax Code § 42.24(1); *see also Cherokee Water Co. v. Gregg Cnty. Appraisal Dist.*, 801 S.W.2d 872, 877 (Tex. 1990) (holding that a trial court has the authority to increase or decrease the appraised value).

[26] In this case, we examine the distinction between a market-value protest and an equal-and-uniform protest; we do not foreclose the possibility that an appeal of another type of determination may have a jurisdictional limit.

[27] *San Jacinto River Auth. v. City of Conroe*, 688 S.W.3d 124, 132 (Tex. 2024) (concluding that compliance with adjudication procedures is mandatory but not jurisdictional); *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 183 (Tex. 2004) (construing an "unable to agree" requirement as mandatory but not jurisdictional).

taxpayer protest" narrows the trial court's de novo trial to the protest the appraisal review board heard. This limitation, however, is not jurisdictional. The taxpayer fixes the grounds for protest. The statute authorizes the trial court to hear an appeal of the protest. Under the statute, however, the District cannot prevail in a new trial of that protest by importing claims the appraisal review board did not hear.

Since *Dubai Petroleum Co. v. Kazi*, our Court has embraced the modern trend of declining to read statutory mandates to be jurisdictional prohibitions absent clear indication that failure to comply with the mandate also deprives a court of the power to decide the claim.[28] *Dubai Petroleum* was a wrongful death suit in which the defendant disputed the trial court's jurisdiction on the basis that a foreign country lacked "equal treaty rights" with the United States, a statutory requirement.[29] We held that any failure to comply with the "equal treaty rights" statutory mandate did not deprive the trial court of subject matter jurisdiction over the claim.[30] The Court announced its movement away from the traditional rule that a claim must satisfy given statutory requisites to vest the trial court with jurisdiction to decide the claim's merit.[31]

In doing so, we emphasized that "the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground

---

[28] 12 S.W.3d 71, 76–77 (Tex. 2000).

[29] *Id.* at 74.

[30] *Id.* at 76–77.

[31] *Id.*

10

that the tribunal lacked subject matter jurisdiction."[32] Denominating statutory requirements as "jurisdictional" has the unfortunate effect of casting doubt on otherwise final judgments. In general, whether a plaintiff has complied with statutory prerequisites implicates the right to relief, not the jurisdiction of the court.[33]

Following *Dubai Petroleum*, we later held that no jurisdictional bar stemmed from a failure to comply with a statute permitting a condemnation action when "the entity and the property owner are unable to agree on the damages."[34] Because a party opposing condemnation could waive the right to complain of the lack of effort to agree, the statutory context revealed that requirement was not a jurisdictional one.[35] And in another condemnation case, we held that (1) the trial court's statutory authority to try appeals "in the same manner as other civil causes"; (2) the lack of an option for the trial court to simply affirm the award; and (3) the fact that the commissioners' award was not admissible, taken together, meant that the trial court

---

[32] *Id.* at 76 (quoting Restatement (Second) of Judgments § 11 cmt. e (Am. L. Inst. 1982)).

[33] *Id.* at 76–77. In suits against the government, however, all statutory prerequisites to suit are jurisdictional requirements. Tex. Gov't Code § 311.034 (abrogating *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Loutzenhiser*, 140 S.W.3d 351 (Tex. 2004)).

[34] *Hubenak*, 141 S.W.3d at 180–83 (quoting and analyzing Tex. Prop. Code § 21.012(b)).

[35] *Id.* at 181–82.

was not jurisdictionally confined to evidence presented during the administrative phase.[36]

The statutory framework in this case similarly employs procedural limits on the trial de novo of a tax protest that are not jurisdictional. A taxpayer and the appraisal district each may appeal to the trial court an order determining a protest.[37] When a taxpayer raises a new basis to protest for the first time in the trial court, the court may "remand the action to the appraisal review board with instructions to allow the property owner an opportunity to cure the property owner's failure to exhaust administrative remedies."[38] While the statute contemplates jurisdictional challenges arising from the failure to exhaust, it eliminates mandatory dismissal for lack of jurisdiction. The parties may forgo remand entirely and "elect that the court determine the appeal on the merits," including the taxpayer's newly presented protest.[39] We have long held that parties cannot confer jurisdiction by agreement.[40] The parties' ability to proceed by agreement on a taxpayer's newly identified ground for protest signals that the parameters of an appeal, though mandatory, are not jurisdictional.

---

[36] *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 476 (Tex. 2008) (quoting Tex. Prop. Code § 21.018(b)).

[37] Tex. Tax Code §§ 42.01, 42.02.

[38] *Id.* § 42.231(b). Section 42.231 applies to all appeals filed on or after September 1, 2019. Act of May 9, 2019, 86th Leg., R.S., ch. 157 §§ 3–4, 2019 Tex. Gen. Laws 286, 287.

[39] Tex. Tax Code § 42.231(e).

[40] *PR Invs.*, 251 S.W.3d at 476–77 & n.17 (observing that jurisdiction cannot be manufactured by consent or waiver).

The statute provides no mirror-image avenue of review to appraisal districts because an appraisal district is in the position of defending its appraised value before the review board. But no matter which party appeals, the trial court hears the protest anew, including new evidence and argument. The trial court does not defer to the appraisal review board's determination. This de novo review is further indication that the limit on the appraisal district's claim is not tantamount to a jurisdictional prohibition.[41]

In this way, the Tax Code provision permitting the appraisal district's appeal shares characteristics with provisions in the condemnation review statute our Court concluded are not jurisdictional.[42] Like the condemnation statute, the Tax Code directs the trial court to conduct a trial de novo. The court may not simply affirm the appraisal review board's order, and it "may not admit in evidence the fact of prior action by the appraisal review board . . . except to the extent necessary to establish its jurisdiction."[43] The Tax Code also provides that the trial court is not confined to the evidence presented to the appraisal review board, similar to condemnation procedures that we held lacked jurisdictional implications.[44] The trial court "is 'appellate'

---

[41] The trial court's de novo review does not, standing alone, confer subject matter jurisdiction. *See Cont'l Cas.*, 19 S.W.3d at 398–99 (holding that statutory provisions that prescribe the manner of judicial review do not independently create jurisdiction). The Legislature's grant of an appeal is the basis for the trial court's subject matter jurisdiction.

[42] *PR Invs.*, 251 S.W.3d at 475–79.

[43] Tex. Tax Code § 42.23(b).

[44] *Compare id.* § 42.23(b), (h), *with PR Invs.*, 251 S.W.3d at 475–79.

only as distinguished from 'original' or 'concurrent,' but not in the sense that the evidence is fixed or that court is confined to that paper record."[45]

The Tax Code's grant of trial de novo is unlike the statute authorizing permissive interlocutory appeals. The latter is a general statute permitting an appeal for "an order that is not otherwise appealable" if the order "involves a controlling question of law" and the appeal will materially advance the litigation toward resolution.[46] As we said in *Elephant Insurance Co. v. Kenyon*, these two conditions are necessary for permission to appeal, but the court of appeals' jurisdiction extends to the entire order, without a limit on any examination of subsidiary issues.[47]

Tax Code Section 42.02, in contrast, grants a right to appeal "an order of the appraisal review board determining . . . a taxpayer protest." The condition is not merely requisite but exclusionary.

This interpretation is consistent with our treatment of other provisions of the Tax Code in *Oncor Electric Delivery Co. v. Wilbarger County Appraisal District*.[48] The taxpayer in that case brought appeals after appraisal districts declined to correct alleged errors in the tax rolls

---

[45] *Willacy Cnty. Appraisal Dist.*, 555 S.W.3d at 50 (holding that an appraisal district may raise a new argument during the taxpayer's appeal to the trial court because review is de novo). The Court in *Willacy* additionally supported its holding by explaining that an affirmative defense cannot be waived by failing to raise it in the administrative phase, but the first reason— that the trial is de novo—is sufficient on its own. *Id.*

[46] Tex. Civ. Prac. & Rem. Code § 51.014(d).

[47] 644 S.W.3d 137, 147 (Tex. 2022).

[48] ___ S.W.3d ___ (Tex. June 21, 2024) (No. 23-0138).

14

stemming from tax protest settlement agreements. The question in those cases was whether provisions barring appraisal review boards from rejecting settlement agreements jurisdictionally barred the trial court from hearing the taxpayer's challenge that those agreements were void due to a mutual mistake. In that case, as in this one, we concluded that a trial court has jurisdiction to consider the claim.[49]

The Landfill argues that statutory limits must be jurisdictional to secure the goal of an expedient, affordable protest system. We agree that the purpose of administrative proceedings is to streamline dispute resolution. A statutory mandate, however, is no less a limit on the prosecution of a claim for relief in court than one that implicates the trial court's power to decide that claim. A court cannot ignore a statutory mandate simply because the mandate lacks jurisdictional consequences.[50] Under the statute in this case, the trial court's consideration of the appraisal district's claim is confined to a de novo determination of the taxpayer's protest.[51] The District has no mandate to expand trial court review of an appraisal beyond the taxpayer's protest.

## C

In this case, confining the claim before the trial court to the taxpayer's protest is of limited consequence.

---

[49] *Id.*, slip op. at 18.

[50] *Image API v. Young*, ___ S.W.3d ___, slip op. at 16 (Tex. June 21, 2024) (No. 22-0308).

[51] Tex. Tax Code §§ 42.02(a), 42.23(a).

First, to the extent that the fair market value of the subject property deviates from its equal and uniform appraised value, the Landfill is entitled to the *lower* of the two amounts for calculating the property tax it owes. In a perfect world, market value and uniform value are the same number, as all properties must be appraised based on market value, adjusted for each property's unique characteristics. Giving the property owner the benefit of the lower of the two valuations harmonizes the cumulative constitutional mandates that property cannot be assessed "at a greater value than its fair cash market value" and that taxation must be "equal and uniform."[52] The Landfill's vigorous rejection of judicial inquiry into fair market value might deprive the trial court of the ability to appraise the property at a value that is *lower* than the equal and uniform amount. But if the fair market value of the property is higher—as both parties seem to presume—that value must yield to the lower equal and uniform value as assessed on comparable properties.

Second, even though the Tax Code limits the trial court's determination in this case to an appraisal amount that is equal and uniform, evidence of a subject property's fair market value is relevant to both the taxpayer's challenge and the trial court's duty to set the subject property's appraised value at an equal and uniform amount, which as we have said, should approach the property's market value.[53] The Tax Code provides three formulas for use in determining whether an

---

[52] Tex. Const. art. VIII, §§ 1(a), 20.

[53] *See Harris Cnty. Appraisal Dist. v. Hous. 8th Wonder Prop., L.P.*, 395 S.W.3d 245, 251–52 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

16

appraisal is equal and uniform.[54] Two compare the "appraisal ratio" of the subject property to comparable properties.[55] The "appraisal ratio" is "the ratio of a property's appraised value as determined by the appraisal office or appraisal review board, as applicable, to . . . the market value of the property."[56] The third formula compares "the appraised value of the property" and "the median appraised value of a reasonable number of comparable properties appropriately adjusted."[57] Implicit in this third formula are appropriate adjustments to the market value of comparable properties, in a manner similar to appropriate adjustments to the market value of the subject property, making their respective appraised values "comparable properties appropriately adjusted." Thus, evidence of the subject property's fair market value is admissible in either kind of taxpayer protest to support or challenge the appropriateness of comparable properties and the adjustments made in determining whether the appraised value is equal and uniform. Using evidence of appropriately adjusted fair market values, the District is free to counter the taxpayer's suggested equal and uniform value of comparable properties—with the caveat that, under the statute, the Landfill gets the benefit of the calculation that results in the lowest appraisal value.[58]

---

[54] Tex. Tax Code § 42.26.

[55] *Id.* § 42.26(a)(1), (2).

[56] *Id.* § 1.12(b).

[57] *Id.* § 42.26(a)(3).

[58] *Id.* § 42.26(b) ("If a property owner is entitled to relief under more than one subdivision of Subsection (a), the court shall order the property's appraised value changed to the value that results in the lowest appraised

Finally, the potential relevance of a subject property's fair market value does not permit sweeping discovery into every aspect of a property owner's business. Discovery is limited to that information relevant to a de novo resolution of the taxpayer's protest, and the burden of answering such discovery must be proportionate to its importance in arriving at an equal and uniform appraised value.[59] Trial courts must limit discovery and protect confidential information when taxing authorities fail to narrowly tailor their discovery requests in a taxpayer protest appeal.

*    *    *

---

value."). We disapprove of courts of appeals cases to the extent they suggest that market value of the subject property is per se irrelevant in unequal-appraisal litigation. *See In re Catherine Tower*, 553 S.W.3d 679, 685–87 (Tex. App.—Austin 2018, orig. proceeding [mand. denied]); *In re APTWT, LLC*, 612 S.W.3d 85, 90–93 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding). For this reason, the differences between the Court and the dissent on this point have little practical effect. Evidence of fair market value is admissible in determining both kinds of taxpayer protests. And we agree that the trial court must address all issues of fact and consider new arguments and evidence in arriving at an appraised value without deference to the review board's determination.

[59] *See* Tex. R. Civ. P. 192.4(b).

The Tax Code limits judicial review to conducting a de novo trial of the taxpayer's protest. In deciding the taxpayer's protest in this case, the trial court is to determine the equal and uniform appraised value for the property subject to taxation. This limit, though mandatory, is not jurisdictional. We affirm the court of appeals' judgment for the reasons stated in this opinion. We remand the case to the trial court for further proceedings.

Jane N. Bland
Justice

**OPINION DELIVERED:** June 21, 2024